1  Gregory E. Schopf (State Bar Number: 122862)
   gschopf@nixonpeabody.com
2  John A. Chatowski (State Bar Number: 174471)
   jchatowski@nixonpeabody.com
3  NIXON PEABODY LLP
   One Embarcadero Center, 18th Floor
4  San Francisco, CA 94111-3600
   Telephone: (415) 984-8200
5  Facsimile: (415) 984-8300

6  Attorneys for Defendant
   ALLIED PROPERTY AND CASUALTY
7  INSURANCE COMPANY, erroneously sued
   and served as ALLIED PROPERTY
8  AND CASUALTY INSURANCE COMPANY,
   A NATIONWIDE COMPANY

9

10

11

12                    UNITED STATES DISTRICT COURT

13                   CENTRAL DISTRICT OF CALIFORNIA

14

15  BARBARA KELLERER,                    CASE NO.: 2:15-cv-00078-DDP (JEMx)

16              Plaintiff,               **DEFENDANT ALLIED PROPERTY
                                         AND CASUALTY INSURANCE
17       v.                             COMPANY'S OPPOSITION TO
                                         PLAINTIFF'S MOTION FOR
18  ALLIED PROPERTY AND CASUALTY         SUMMARY ADJUDICATION OF
    INSURANCE COMPANY, a Nationwide      THE FIRST, SECOND, THIRD,
19  Company and DOES 1 through 25,       FOURTH AND FIFTH CAUSES OF
    Inclusive,                           ACTION IN PLAINTIFF'S
20                                       COMPLAINT, OR IN THE
              Defendants.                ALTERNATIVE, FOR A
21                                       CONTINUANCE OF PLAINTIFF'S
                                         MOTION UNDER FRCP RULE 56(d)**
22
                                         Date:       September 28, 2015
23                                       Time:       10:00 a.m.
                                         Courtroom: 3
24

25

26

27

28

---

DEFENDANT ALLIED'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION OF
THE FIRST, SECOND, THIRD, FOURTH AND FIFTH CAUSES OF ACTION IN PLAINTIFF'S COMPLAINT

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................1

II.   STATEMENT OF FACTS .................................................................3

III.  DISCUSSION.....................................................................................3

      A.    Kellerer's Motion Should Be Denied Because She Has No
            Standing To Pursue Her Claims...............................................3

      B.    Kellerer Is Not Entitled To Summary Adjudication On Her
            First Cause Of Action Regarding The Duty To Defend
            Because There Was No Potential For Coverage For The
            Claims Asserted In The Guzman Action ..................................6

            1.    The Applicable Law Regarding Duty To Defend.............6

            2.    The Broad Language of the Business Pursuits
                  Exclusion in the Allied Policies...................................7

            3.    Analysis...........................................................................8

                  i.    Kellerer Cannot Rely On "Evidence" That She
                        Never Presented To Allied, And That
                        Contradicts What She Told Allied..................9

                  ii.   Even If Kellerer Could Demonstrate That Allied
                        Should Have Disbelieved Her And Discovered
                        Her Revised Story Before Declining To Defend
                        Her, Allied Was Still Entitled To Rely Upon
                        The Business Pursuits Exclusion To Properly
                        Deny The Claim...................................... 13

      C.    Kellerer Is Not Entitled To Summary Adjudication On Her
            Third and Fifth Causes Of Action Because (1) There Was No
            Possibility Of Coverage For The Claims Asserted In The
            Guzman Action, And (2) Under Any Circumstances, A
            Question Of Fact Exists As To The Reasonableness Of Her
            Attorneys' Fees .................................................................. 15

      D.    Kellerer Is Not Entitled To Summary Adjudication On Her
            Second And Fourth Causes Of Action Because Even Under
            Kellerer's And Guzman's Newly Alleged Facts (1) There Is
            No Coverage For The Claims Asserted In The Guzman
            Action, And (2) Under Any Circumstances, A Question Of
            Fact Exists As To The Reasonableness Of The Settlement.............. 16

      E.    Allied Is Entitled To Conduct Discovery Regarding
            Kellerer's Claims.............................................................. 18

IV.   CONCLUSION.......................................................................... 20

i

# <u>TABLE OF AUTHORITIES</u>

## FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986).................................................................18

*Burlington N. Santa Fe R.R. v. Assiniboine & Sioux Tribes*,
   323 F.3d 767 (9th Cir. 2003) ...................................................19

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986).................................................................19

*Cleveland v. Policy Management Systems Corp.*,
   526 US 795 (1999)...................................................................10

*Metabolife Int'l, Inc. v. Wornick*,
   264 F.3d 832 (9th Cir. 2001) ...................................................19

*Rissetto v. Plumbers & Steamfitters Local 343*,
   94 F.3d 597 (9th Cir. 1996) .......................................................2

*Rogers v. Home Shopping Network, Inc.*,
   57 F.Supp.2d 973 (C.D. Cal. 1998) .........................................18

*United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*,
   555 F.3d 771 (9th Cir. 2009) .....................................................2

*Van Asdale v. International Game Tech.*,
   577 F3d 989, 998 (9th Cir. 2009) ............................................10

*Visa International Service Association v. Bankcard Holders of America*,
   784 F.2d 1472 (9th Cir. 1986) .................................................19

*Wichita Falls Office Assoc. v. Banc One Corp.*,
   978 F.2d 915 (5th Cir. 1992) ...................................................19

*Zurich Ins. Co. v. Killer Music, Inc.*,
   998 F.2d 674 (9th Cir. 1993) ...................................................17

DEFENDANT ALLIED'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION OF THE FIRST, SECOND, THIRD, FOURTH AND FIFTH CAUSES OF ACTION IN PLAINTIFF'S COMPLAINT

1

<b>CALIFORNIA CASES</b>

*Aerojet-General Corp. v. Transport Indemnity Co.,*
    8 Cal.4th 78 (Cal. 1992).................................................................6

*B & E Conval. Ctr. v. State Comp. Ins. Fund,*
    8 Cal.4th 78 (Cal. 1992).................................................................7

*Berrington v. Williams,*
    244 Cal.App.2d 130 (Cal. App. 1966)............................................4

*Cain v. State Farm Mutual Auto. Ins. Co.,*
    47 Cal.App.3d 783 (Cal. App. 1975)..............................................5

*California v. Pacific Indemnity Co.,*
    63 Cal.App.4th 1535 (Cal. App. 1998).....................................15-16

*Crowley v. Katleman,*
    8 Cal.4th 666 (Cal. 1994)..............................................................4

*Diamond Heights Homeowners Assoc. v. National Am. Ins. Co.,*
    227 Cal.App.3d 563 (Cal. App. 1990).....................................16-17

*Fire Ins. Exchange v. Jiminez,*
    184 Cal.App.3d 437 (Cal. App. 1986)............................................7

*Griffin Dewatering Corp. v. Northern Ins. Co. of N.Y.,*
    176 Cal.4th 172 (cal. 2009) ..........................................................7

*Isaacson v. California Ins. Guar. Assoc.,*
    44 Cal.3d 775 (Cal. 1988).............................................................16

*Medill v. Westport Ins. Corp.,*
    143 Cal.App.4th 819 (Cal. App. 2006).........................................14

*Monticello Ins. Co. v. Essex Ins. Co.,*
    162Cal.App.4th 1376 (Cal.App. 2008)......................................9-10

*Montrose Chem. Corp. of Calif. v. Sup. Ct.,*
    6 Cal.4th 287 (Cal. 1983)..............................................................7

*Murphy v. Allstate Ins. Co.,*
    17 Cal.3d 937 (Cal. 1976)..............................................................4

*Powerine Oil Co. v. Sup. Ct.*,
   37 Cal.4th 377 (Cal. 2005)............................................................7

*Purcell v. Colonial Ins. Co.*,
   20 Cal.App.3d 807 (Cal. App. 1971)......................................... 4-5

*Ringler Assoc. Inc. v. Maryland Cas. Co.*,
   80 Cal.App.4th 1165 (Cal. App. 2000)........................................6

*Scottsdale Ins. Co. v. MV Transp.*,
   36 Cal.4th 643 (Cal. 2005)............................................................7

*St. Paul Fire & Marine Ins. Co. v. Coss*,
   80 Cal.App.3d 888 (Cal. App. 1978)............................................7

*Villacres v. ABM Industries Inc.*,
   189 Cal.App.4th 562 (Cal. App. 2011)........................................4

*Waller v. Truck Ins. Exch.*,
   11 Cal.4th 1 (Cal. 1995)...............................................................6

*West American Ins. Co. v. California Mutual Ins. Co*,
   195 Cal.App.3d 314 (Cal. App. 1987)................................... 13-14

## FEDERAL RULES

F.R.C.P. 56(d) ...............................................................................18

## CALIFORNIA STATUTES

Cal. Civ. Code § 1459......................................................................4

Cal. Code Civ. Proc. § 367 ..............................................................3

Cal. Code Civ. Proc. § 368 ..............................................................4

DEFENDANT ALLIED'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION OF
THE FIRST, SECOND, THIRD, FOURTH AND FIFTH CAUSES OF ACTION IN PLAINTIFF'S COMPLAINT

## I.    INTRODUCTION

Plaintiff Barbara Kellerer ("Kellerer") and Defendant Allied Property and Casualty Insurance Company ("Allied") have each filed cross-motions for summary judgment and/or summary adjudication.  [Dkt. Nos. 18 and 20.]  The principal issue with respect to both motions is whether Allied owed Kellerer a duty to defend her in the underlying third party action filed by Pedro Guzman ("Guzman").  The secondary issues will be moot if the Court grants Allied's motion.  For the reasons stated in Allied's motion,[1] and which are summarized below, the Court need not address these secondary issues because under the facts and the law no possibility of coverage has ever existed for the claim because of the application of the business pursuits exclusion in the Allied policies.

Kellerer's principal argument is that "the different factual allegations" of how Guzman was allegedly injured "would only create an argument that the Guzman Civil Action is a false claim, which would require Allied to defend the claim."  (Pltf's Memo. in Supp. of Motion [Dkt. 20-1] ("Pltf's Memo."), at 14:17-19.)  However, Allied's position here is <u>not</u> that there is no coverage because this is a "false claim." Instead, there is no coverage because the business pursuits exclusions explicitly exclude coverage for Guzman's alleged injuries, <u>regardless of whether he was carrying a panel for a horse corral or a "cabinet."</u>  The exclusions apply because (a) Guzman and Kellerer were both paid by the Foundation, (b) it is undisputed that Guzman's principal purpose for being at the property was to assist with various tasks related to the Foundation's pursuits, and (c) anything else that Guzman may have done, including allegedly carrying a "cabinet," was merely incidental to the work he was hired and paid to do for the Foundation.

---

[1] Instead of repeating all of the reasons why the business pursuits exclusions bar Kellerer's claims, as set forth in detail Allied's memorandum in support of its motion, Allied hereby incorporates all of its arguments by this reference.  [Dkt. No. 18-1.]  Any specific issues raised by Kellerer in her motion will be addressed below.

DEFENDANT ALLIED'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION OF THE FIRST, SECOND, THIRD, FOURTH AND FIFTH CAUSES OF ACTION IN PLAINTIFF'S COMPLAINT

The remarkable changes in her story since Allied denied Kellerer's tender do not change things. During the claims process, Kellerer explicitly told Allied that (1) Guzman was paid by the Foundation, (2) that she never paid Guzman out of her own funds for any work that he performed, and (3) that Guzman never moved any furniture for her. Now, in a transparently self-serving declaration, Kellerer claims that she paid Guzman out of her own funds for <u>some</u> work that he allegedly performed and, specifically, that she "paid Mr. Pedro Guzman $20 for moving furniture on December 17, 2010."[2] (Barbara Kellerer Decl. in Supp. of Pltf's Motion [Dkt. No. 20-3] ("Kellerer Decl."), at ¶ 11.) Allied, however, properly assumed that what Kellerer told it during its investigation was true. And the law is clear that Kellerer cannot now, after she settled with Guzman, manufacture a triable issue of material fact as to Allied's duty to defend by alleging new and different (and indeed contradictory) facts that she <u>never</u> provided to Allied (or that Allied could reasonably have imagined).

Even assuming that Allied could have imagined the new and different facts, Kellerer would still not be entitled to judgment as a matter of law on her claims. The scope of the business pursuits exclusions preclude coverage regardless of the new and different facts. Moreover, Kellerer lacks standing to pursue at least some of the claims she has asserted. Also, even assuming she has standing and a duty to defend her existed, there are triable issues of material fact as to any duty to indemnify her under the terms of the policy, the collusive nature of the settlement, and Kellerer's claim for attorneys' fees, all of which must be determined by a jury. Kellerer's motion must be denied.

---

[2] As Allied noted in its memorandum, Kellerer's claim that she paid Guzman $20 in cash on December 17, 2010 contradicts what she told Allied and the California Workers' Compensation Appeals Board ("WCAB"). Kellerer, therefore, should be judicially estopped from seeking to gain from "playing fast and loose with the courts." *United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 771, 779 (9th Cir. 2009); *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996) (judicial estoppel applies to inconsistent claims asserted in workers' compensation proceedings where a favorable result is obtained).

## II.    STATEMENT OF FACTS

Allied's memorandum in support of its motion for summary judgment sets forth in detail the facts underlying this case, including the facts and circumstances of Guzman's alleged fall; Guzman's initial claim of injury to Kellerer; Allied's initial investigation of the claim and interviews of Kellerer and Guzman; Guzman's application for benefits filed in the WCAB; Allied's successful efforts to obtain Kellerer's dismissal based on the evidence she provided to Allied that established that only the Foundation paid Guzman for his work on December 17, 2010; the filing of Guzman's civil action against Kellerer; Kellerer's tender to Allied, Allied's investigation, and denial of her claim; and, the settlement of the underlying action and the filing of the present action. Allied will not re-state all of those facts here. Instead, Allied incorporates by reference the full statement of facts in its own moving papers. Here, Allied will only address below those specific "factual" allegations asserted by Kellerer that she relies upon for the purposes of her motion. Allied's discussion of these allegations, however, is not an admission that there is any triable issue of material fact as to whether Kellerer was owed a defense, or should be indemnified for the settlement she reached with Guzman. To the contrary, each of these alleged "facts" (or more properly inconsistencies) are irrelevant given the scope of the business pursuits exclusion in the Allied policies.

## III.    DISCUSSION

A.    Kellerer's Motion Should Be Denied Because She Has No Standing To Pursue Her Claims.

The settlement agreement between Kellerer and Guzman contains a purported partial assignment. The effect of that assignment is that Kellerer is prosecuting claims in this action that do not belong to her. An action must be prosecuted in the name of the real party in interest. Cal. Code Civ. Proc. § 367. Here, however, Kellerer is not the real party in interest with respect all of her claims that are the subject of her motion. Her motion, therefore, should be denied.

All of Kellerer's claims against Allied derive from the same primary right, that is, her rights vis-à-vis Allied under the subject policies. "The violation of one primary right constitutes a single cause of action, though it may entitle the injured party to many forms of relief." *Villacres v. ABM Indust. Inc.*, 189 Cal.App.4th 562, 577 (Cal.App.2011) (*quoting Crowley v. Katleman*, 8 Cal.4th 666, 681-82 (Cal.1994)). As the court in *Villacres* stated, "the primary right theory provides that a cause of action consists of (1) a primary right possessed by the plaintiff, (2) a corresponding duty devolving upon the defendant, and (3) a delict or wrong done by the defendant which consists of a breach of the primary right." *Villacres*, 189 Cal.App.4th at 576.

In the context of a third party coverage dispute, if an insurer <u>wrongfully</u> denies a duty to defend, the insured may settle his or her claims against the third party—so long as the settlement is reasonable, and is not fraudulent and collusive (*see* discussion below)—and then assign his or her claims against the insurer to the third party. Claims for purely personal losses (*e.g.* emotional distress), however, are not assignable. *Murphy v. Allstate Ins. Co.,* 17 Cal.3d 937, 942-944 (Cal. 1976). When an insured makes an effective assignment, the assignee "stands in the shoes" of the insured, and can assert the assigned claims against the insurer. Civ. Code § 1459; Code Civ. Proc., § 368; *Berrington* v. *Williams,* 244 Cal.App.2d 130, 135-136 (Cal. App. 1966).

An insured, however, <u>cannot</u> make a partial assignment, because such assignments violate the rule against splitting causes of action. *Purcell v. Colonial Ins. Co.*, 20 Cal.App.3d 807, 813-814 (Cal. App. 1971). In *Purcell*, Purcell was involved in an automobile collision, resulting in the death of two individuals, and injury to a third. *Purcell,* 20 Cal.App.3d at 809. Purcell was insured under a Colonial automobile policy. The injured individual and relatives of the deceased (the "Reichs") made a policy limits demand, which Colonial refused. *Id.* Purcell then settled with the injured individual and the Reichs, and assigned his causes of action to the Reichs. *Id.* at 810-811. The Reichs then brought an action against both Purcell and Colonial, and the Reichs won a judgment in excess of the policy limits. *Id.* at 811. Plaintiff Purcell

-4-

1    subsequently brought a separate pain and suffering action against Colonial related to

2    the company's failure to settle.

3        The *Purcell* court determined that Purcell's pain and suffering action failed

4    because he tried to split his cause of action against Colonial by assigning certain

5    claims to the Reichs, yet still trying to assert the pain and suffering claim in his own

6    capacity. *Id.* at 813-814.  The court stated, "[W]e conclude that plaintiff here was

7    possessed of a single and indivisible cause of action against defendant.  He assigned

8    that cause of action to the Reichs.  In so doing the plaintiff simply waived any claim

9    for purely personal damages…he might have been able to recover had he brought the

10   action himself.  He could not split the cause of action." *Id.* at 814 (emphasis added.)

11   Thus, when an insured attempts to make a partial assignment by assigning some claims

12   to a third party, yet retaining other claims for herself, the plaintiff violates the rule

13   against splitting causes of action and the plaintiff's action fails.  *Id.* at 814.

14       Another case, *Cain v. State Farm Mutual Auto. Ins. Co.,* 47 Cal.App.3d 783

15   (Cal. App. 1975), shows the proper procedure whereby an insured may assign some,

16   but not all, claims to a third party without losing his or her standing to sue by violating

17   the rule against splitting causes of action.  In *Cain,* the insured assigned his causes of

18   action against his insurance company for failure to settle within policy limits to a third

19   party, yet reserved his right to sue for physical injuries sustained as a result of the

20   insurer's failure to settle.  *Cain,* 47 Cal.App.3d at 790.  State Farm argued that,

21   following *Purcell,* the insured was a "partial assignor" and was thus barred from

22   bringing his claim due to improperly splitting the cause of action.  *Id.* at 795-796.  The

23   *Cain* court, however, found that the insured was not barred from bringing his causes of

24   action because both the insured and third party were joined as plaintiffs in a single suit

25   against the insurer.  *Id.* at 796.  Therefore, the partial assignment—usually improper

26   when a cause of action is split—was allowed because the assignor and assignee were

27   joined as plaintiffs in the same action.

28   ///

-5-

The instant case is unique in that it goes beyond *Purcell* and *Cain* because, here, Kellerer appears to have tried to split her coverage and bad faith claims with Guzman. The settlement agreement's assignment provision provides:

> In consideration of the release as provided herein, DEFENDANT assigns to PLAINTIFF all of her rights and claims against Allied related to the Settlement Amount as set forth above. This assignment does not include DEFENDANT's claims for reimbursement of defense fees and costs, Brandt fees and/or bad faith damages.

(Ex. D to Mark Jubelt Decl. in Supp. of Pltf's Motion [Dkt. No. 20-7] ("Jubelt Decl.") at p. 2.)  Because Kellerer has split her claims with Guzman, who is not a party to this proceeding, she lacks the necessary standing to pursue her intertwined causes of action for declaratory relief, and breach of duties, etc. Kellerer's motion for summary adjudication, therefore, should be denied in its entirety.

B.    Kellerer Is Not Entitled To Summary Adjudication On Her First Cause Of Action Regarding The Duty To Defend Because There Was No Potential For Coverage For The Claims Asserted In The Guzman Action.

1.    The Applicable Law Regarding Duty To Defend.

In her First Cause of Action, Kellerer seeks a declaration that Allied owed her a duty to defend in the Guzman civil action.  (Ex. A to John Chatowski Decl. in Supp. of Allied's Motion [Dkt. 18-16] ("Chatowski Decl.") at pp. 5-6.)  In her motion, Kellerer correctly notes Allied has the burden to establish the absence of coverage.  That is, if there is no factual dispute, and no possibility of the potential for coverage for any of the claims asserted in the underlying suit under the policies, then the Court must deny Kellerer's motion.  For the reasons below, and as more fully discussed in Allied's memorandum in support of its motion, Allied has met its burden and Kellerer is not entitled to the relief she seeks.

An insurer has a duty to defend if it is aware of facts giving rise to the potential for coverage. *Waller v. Truck Ins. Exch.*, 11 Cal.4th 1, 19 (Cal. 1995).  Whether there is a duty to defend involves comparing the allegations of the complaint with the terms of the policy. *Ringler Assoc. Inc. v. Maryland Cas. Co.*, 80 Cal.App.4th 1165, 1186 (Cal. App. 2000).  However, the duty to defend is determined "from all of the

-6-

information available to the insurer at the time of the tender of the defense." *B & E Conval. Ctr. v. State Comp. Ins. Fund,* 8 Cal.4th 78, 92 (Cal. 1992) (emphasis added). *See also Montrose Chem. Corp. of Calif. v. Sup. Ct.,* 6 Cal.4th 287, 295-296 (Cal. 1983); *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal.4th 643, 654 (Cal. 2005); *Griffin Dewatering Corp. v. Northern Ins. Co. of N.Y.,* 176 Cal.4th 172, 197-198 (Cal. 2009).

  2. The Broad Language of the Business Pursuits Exclusion in the Allied Policies.

  "An insurance policy is a contract, and when the terms are plain and unambiguous, it is the duty of the court to hold the parties to such contract." *St. Paul Fire & Marine Ins. Co. v. Coss*, 80 Cal.App.3d 888, 896 (Cal. App. 1978). Interpretation of an insurance policy is a question of law. *Powerine Oil Co. v. Sup. Ct.*, 37 Cal.4th 377, 390 (Cal. 2005). Insurance contracts are contracts to which the ordinary rules of contractual interpretation apply. *Powerine Oil,* 37 Cal.4th 377 at 390. If contractual language is clear and explicit, it governs. *Id.* Courts will not indulge in a forced construction of an insurance policy so as to fasten a liability on the insurance company which it has not assumed. *Coss, 80 Cal.App.3d* at 896. If a clear and explicit exclusion precludes coverage under a policy, summary judgment is warranted. *Fire Ins. Exchange v. Jiminez*, 184 Cal.App.3d 437, 439 (Cal. App. 1986).

  The business pursuits exclusion in the Homeowners Policy provides:

  SECTION II – EXCLUSIONS:

  E. Coverage E – Personal Liability and COVERAGE F – Medical Payments to Others
  Coverages E and F do not apply to the following:

   ....

  2. "Business".
    a. "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the business is owned or operated by an "insured" or employs an "insured".
    This Exclusion E.2. applies, but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

(Ex. B to Lars Skulborstad Decl. in Supp. of Allied's Motion [Dkt. No. 18-2]

("Skulborstad Decl.") at p. 64 (emphasis added).)  The Policy defines a "business" as:

    a.  A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or
    b.  Any other activity engaged in for money or other compensation, except the following:
        1)  Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;
        2)  Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or
        3)  The rendering of home day care services to a relative of an "insured".

(*Id.* at p. 44.)

    The business pursuits exclusion in the Umbrella Policy provides:

    III.EXCLUSIONS
      A. The coverages provided by this policy do not apply to:
      . . .

      4. "Bodily injury," "personal injury" or "property damage" arising out of or in connection with a "business" engaged in by an "insured". This Exclusion (A.4.) applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".
      . . .

      23. Liability assumed by an "insured" under any contract or agreement.
         This exclusion does not apply to any indemnity obligation assumed by the "insured" under a written contract directly related to the ownership, maintenance or use of the residence premises.

(*Id.*, Ex. C at p. 124 (emphasis added).)  The Umbrella Policy defines a "business" as:

    1.  A trade, profession or occupation engaged in on a full time or occasional basis; or
    2.  Any other activity engaged in for money or other compensation, except the following:
      a.  Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;
      b.  Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or
      c.  The rendering of home day care services to a relative of an "insured."

(*Id.* at p. 125.)

    The business pursuits exclusions, therefore, are twofold – they apply to any business on the insured's premises, and to any business that the insured is engaged in.

1  They are also very broad in that their application is premised upon "bodily injury" or

2  "property damage" <u>arising out of or in connection with</u> a "'business' conducted from

3  an 'insured location' or engaged in by an 'insured.'" (Emphasis added).

4        3.   <u>Analysis.</u>

5       Kellerer argues that Guzman's suit against her was a "false claim" case, but that

6  argument is a red herring.  Whether or not Guzman "made up" up the "facts" of his

7  case against her does not change the outcome of her coverage contentions.  The

8  business pursuits exclusion applies notwithstanding Guzman's changing story.

9  Whether he was carrying a piece of metal for the horse corral or a "cabinet," and

10  whether Kellerer paid him $20 from her own funds for some part of his work on

11  December 17, 2010, does not change things.  As explained below and in Allied's

12  motion for summary judgment, the business pursuits exclusion applies to Guzman's

13  claims because he was hired by the Foundation, because the principal purpose for his

14  presence on Keller's property was to provide work for the Foundation, and because

15  anything else that he may have done, including allegedly carrying a "cabinet," was

16  merely incidental to the work he was hired and paid to do for the Foundation.

17          i.   <u>Kellerer Cannot Rely On "Evidence" That She Never Presented To</u>

18             <u>Allied, And That Contradicts What She Told Allied.</u>

19       As an initial matter, the Court must disregard Kellerer's August 5, 2015

20  declaration submitted with her summary adjudication and her October 17, 2014

21  declaration attached to her Complaint.  Both are irrelevant for purposes of evaluating

22  whether Allied owed her a duty to defend the Guzman Action.  She does not declare

23  that she provided any of the information in either of her declarations to Allied and, in

24  fact, it is clear she did not as evidenced by the statements she made to Allied that it

25  relied upon in denying her claim.

26       An insured cannot, after a defense is denied, reach a settlement with a third party

27  claimant, and then return to the insurer with new evidence claiming that it shows that

28  there was the possibility of coverage.  *Monticello Ins. Co. v. Essex Ins. Co.,* 162

Cal.App.4th 1376 (Cal.App. 2008).  In *Monticello*, the insured's tender of a construction defect action was denied, and the another carrier for the insured settled the underlying action.  The settling carrier then sued Essex for contribution, arguing that the claims in the underlying suit potentially sought damages within the Essex policy.  *Monticello,* 162 Cal.App.4th at 1379-1380.  The settling carrier moved for summary judgment.  The trial court denied the motion, concluding that the complaint did not reveal the possibility of coverage.  The court of appeal affirmed.  *Id.* at 1387.  The settling carrier claimed that there was the possibility of coverage because of a "punch list" that was created after the tender was denied, but that was never disclosed to Essex.  The court of appeal held that the settling carrier was nevertheless not entitled to summary judgment because it could not sustain its burden "to establish that Essex actually had the Defect List at a point in time when it could have decided to participate in the defense of [the insured] in the underlying action." *Id.* at 1388.

Further, a party cannot create an issue of fact by a declaration contradicting his or her prior sworn testimony.  The contradictory declaration creates no genuine issue of fact on a summary judgment motion.  *Cleveland v. Policy Management Systems Corp.,* 526 US 795, 806 (1999); *Van Asdale v. International Game Tech.* 577 F3d 989, 998 (9th Cir. 2009).  This applies whether the previous statement involved a purely "factual" contradiction or a "legal conclusion."  *Cleveland,* 526 US at 807.  In her declaration attached to her Complaint, Kellerer stated, under oath: "I do not recall when Mr. Pedro Guzman moved furniture while he worked at the property.  I do recall that he did move some furniture, but not what he moved or when." (Ex. A to Chatowski Decl. at p 21.)  Kellerer now claims in her declaration attached to her motion that she "paid Mr. Pedro Guzman $20 <u>for moving furniture on December 17, 2010</u>." (Kellerer Decl., at ¶ 11 (emphasis added).)

The holdings in *Monticello, Cleveland,* and *Van Asdale* apply equally here, and indeed even more so, because the "new" facts presented by Kellerer in her motion and two declarations <u>flatly contradict</u> what she told Allied.  Kellerer claims that "Mr.

-10-

1    Guzman was paid with checks for the work he performed for the Foundation and with

2    cash by Barbara Kellerer for the services performed for her.  (Undisputed Material

3    Fact Nos. 4, 6, 7)."  (Pltf's Memo. at 6:9-11.)  This assertion contradicts what she told

4    Allied during its investigation.

5         First, there is (and can be) no allegation that Kellerer told Allied that she paid

6    Guzman from her own funds for any of the work he performed at her property.

7    (Skulborstad Decl. at ¶ 7.)  Indeed, Skulborstad of Allied asked Kellerer during her

8    recorded interview if she "paid [Guzman] out of [her] own pocket," to which she

9    responded "Um, I paid, uh, from the foundation."  (*Id. at* ¶ 7 and Ex. E at p. 139.)

10        Second, the documents Kellerer gave to Allied showed that all payments to

11   Guzman were by the Foundation, including any payments on December 17, 2010.

12   (Tina Moore Decl. in Supp. of Allied's Motion [Dkt. No. 18-10] ("Moore Decl.") at

13   ¶ 5 and Ex. A at pp. 7-17.)  These included copies of checks Guzman received for his

14   work (all of which were from an account of the Foundation), and "worksheets" that

15   Kellerer said showed the work he performed in November and December 2010, and

16   the dates he worked.  (*Id.*)  Of relevance here is the December 2010 worksheet and

17   checks, which show that Guzman was paid $460 that month by the Foundation for his

18   work, including for brick work, planting trees and bushes, and "pipe coral" [sic] work.

19   (*Id. at* ¶ 5 and Ex. A at p. 9.)  The December 17, 2010, entry on this worksheet

20   described Guzman's work only as work on the "pipe coral" [sic] and "bushes."  (*Id.*)

21        Third, in her declaration in support of her motion, Kellerer claims that she "paid

22   Mr. Pedro Guzman $20 for moving furniture on December 17, 2010."  (Kellerer Decl.,

23   at ¶ 11 (emphasis added).)  This, however, contradicts what she told Skulborstad

24   during her interview, what she told Tina Moore of Allied, and the evidence described

25   above from her December 2010 worksheet.  Skulborstad specifically asked Kellerer

26   about the furniture issue in her recorded interview.  They discussed the fact that, in his

27   civil complaint, Guzman claimed he fell while carrying a cabinet.  Kellerer told

28   Skulborstad that was not correct.  She told him: "He never said there was furniture.

-11-

1    There wasn't any furniture, it was six chairs and a table or something, so now he

2    comes up and it's a furniture and he was tripping over a pipe 'cause there's not very

3    much furniture.  There was furniture from the guy who lived there before and he left

4    some furniture, but he was not carrying furniture around, okay." (Skulborstad Decl. at

5    ¶ 9 and Ex. E at p. 144.)  Now, in a complete about face, Kellerer claims that she did

6    pay Guzman to move furniture for her.[3]

7          Finally, Kellerer's summary judgment declaration flatly contradicts her earlier

8    declaration attached to her complaint where she said "I do not recall when Mr. Pedro

9    Guzman moved furniture while he worked at the property.  I do recall that he did move

10    some furniture, but not what he moved or when." (Ex. A to Chatowski Decl. at p 21.)

11    Now she says that she paid him $20 on December 17, 2010 to move furniture for her.

12    Kellerer's current testimony, like her original testimony, is simply not relevant with

13    respect to whether Allied owed her a duty to defend, and should not be considered.

14          In short, it remains undisputed that all of Kellerer's new (and contradictory)

15    facts were never disclosed to Allied.  Indeed, if these facts were known to the WCAB,

16    it is unlikely that Kellerer would have been dismissed from Guzman's workers'

17    compensation action.  Kellerer, however, cannot have it both ways.  She convinced the

18    WCAB that she was not Guzman's employer because he was paid by the Foundation

19    on December 27, 2010.  She cannot now change her story, with dubious "evidence,"

20    after Allied denied coverage, to call into question Allied's investigation and defense

21    and coverage determination.

22

23    [3] The "evidence" that Kellerer actually paid Guzman $20 in cash to move furniture on
December 17, 2010 is also dubious at best.  Not only did she  never tell Allied that she
24    paid Guzman out of her own funds, but the "evidence" upon which Kellerer appears to
base her claim appears to be a new December 2010 "worksheet" that again, she never
25    provided to Allied.  This document was only produced recently in discovery.  It is
otherwise identical to the December 2010 worksheet that Kellerer gave to Allied in
26    January 2011, except that it includes for the very first time a reference to a purported
"Cash $20" payment to Guzman on December 17, 2010. (Ex. H to Chatowski Decl. at
27    p. 160.)  Kellerer has not explained why she made this change to her worksheet, when
she made it, or why she never produced it until after she filed this action.
28

DEFENDANT ALLIED'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION OF
THE FIRST, SECOND, THIRD, FOURTH AND FIFTH CAUSES OF ACTION IN PLAINTIFF'S COMPLAINT

On May 29, 2013, Skulborstad of Allied sent a letter to Kellerer's counsel stating that if he had any additional facts or documentation that he wanted Allied to consider to please provide them. (Skulborstad Decl. at ¶ 14 and Ex. K.)  Skulborstad never received a response. (*Id.*)  Had Kellerer or her counsel had any further information to provide in support of Kellerer's claim, nothing prevented them from presenting it at that time.  Doing so after she reached her settlement with Guzman and filed this action cannot create a basis for a duty to defend.  The Court must ignore both of Kellerer's self-serving declarations and all her "new" evidence for purposes of determining whether any duty to defend arose.

        ii.     Even If Kellerer Could Demonstrate That Allied Should Have Disbelieved Her And Discovered Her Revised Story Before Declining To Defend Her, Allied Was Still Entitled To Rely Upon The Business Pursuits Exclusion To Properly Deny The Claim.

Even assuming the truth of the allegations in the Guzman complaint and any of the facts as alleged (or revised) by Guzman and Kellerer, and further assuming that Allied was told these facts, Allied still could rely on the business pursuits exclusion because Guzman's presence at the property was directly and principally related to the "business" nature of the Foundation, and it is undisputed that Guzman was paid primarily, if not exclusively, by the Foundation.  Moreover, Guzman's additional purported activities at the property cannot be viewed as anything but incidental to his work for the Foundation, and thus do not invoke coverage.

This case is controlled by the holding in *West American Ins. Co. v. Calif. Mutual Ins. Co,* 195 Cal.App.3d 314 (Cal. App. 1987).  There, the insured operated a cement and masonry business out of his home.  His employees would assemble at his home, gather the trucks and tools, and then depart to their worksites.  On Fridays, which were paydays, the insured's employees would gather in his den while waiting for their pay, playing pool and dice games and drinking beer furnished by the insured.  One day, after the insured's employees had been paid, several remained at the premises, at which point there was a fight and one of the employees was injured.  *West American,*

-13-

195 Cal.App.3d at 317-318.  California Mutual, who issued a homeowners insurance

policy to the insured that contained a business pursuits exclusion, denied that it owed a

duty to defend or indemnify the suit filed by the employee against his employer.

The trial court held that the exclusion did not apply, but the court of appeal

reversed.  The court of appeal held:

> "There is no doubt that [the insured] was engaged in a business
> pursuit when he invited his employees onto his premises and
> provided them with beer and recreation.... An employer's
> business pursuit logically includes any activity which arises from
> and is in the course of an employee's employment. [¶]  Even if
> the Friday night gathering was partially motivated by social
> interests, the result would be the same.  <u>Nothing in the insurance
> policy requires that the business pursuit be wholly business
> related for the exception to apply."</u>

*Id.* at 324 (emphasis added).

In the present case, the business pursuits exclusions apply because Guzman's

injury arose "out of or in connection with a 'business' conducted from" the Kellerer

property or "engaged in by an 'insured.'"  It is undisputed that Guzman's very

presence at Kellerer's property was directly and principally related to the "business"

nature of the Foundation—and that he was paid primarily, if not exclusively, by the

Foundation.  Kellerer told Allied that Guzman was a day laborer that she found

standing outside Home Depot, and he was paid by the Foundation, which was going to

use the property to train horses for equine therapy for children. (Moore Decl. at ¶ 4;

Skulborstad Decl. at ¶ 6 and Ex. E at pp. 137, 141.)  Indeed, Kellerer concedes that

"most" of Guzman's work was for the Foundation, and affirms that the Foundation had

the right to use her property. (Kellerer Decl. at ¶¶ 7-8.)  The fact that Kellerer now

claims that "some" portion (specifically twenty dollars' worth on December 17, 2010)

of the work Guzman did was done for her personally is irrelevant.  The language

"arising from" in business exclusion provisions has been given broad interpretation.

*Medill v. Westport Ins. Corp.,* 143 Cal.App.4th 819, 830 (Cal.App.2006) ("It is settled

that this language does not import any particular standard of causation or theory of

liability into an insurance policy.  Rather, it broadly links a factual situation with the

-14-

1    event creating liability, and connotes only a minimal causal connection or incidental

2    relationship.").

3         All of the available facts established for Allied that Guzman was hired

4    specifically to be on the property to perform work for the Foundation and was paid

5    primarily, if not exclusively, by the Foundation.  The other "work" Guzman allegedly

6    performed relevant to his claim, *i.e.*, the alleged carrying of a cabinet, could not

7    reasonably be categorized as anything but incidental to his work for the Foundation.

8    Moreover, the undisputed facts that Kellerer was the Foundation's president and was

9    paid by the Foundation in 2010, and that she directed Guzman's work, further

10   confirmed for Allied that the business pursuits exclusions was all the more applicable.

11        Even under the distinctly different and evolving factual scenarios presented by

12   Guzman or Kellerer since the beginning of this claim, there was no possibility of

13   coverage for Guzman's alleged injury because of the broad scope of the business

14   pursuits exclusion.  Kellerer's motion for summary adjudication as to her first cause of

15   action must be denied.

16   C.   Kellerer Is Not Entitled To Summary Adjudication On Her Third and Fifth
          Causes Of Action Because (1) There Was No Possibility Of Coverage For The
17        Claims Asserted In The Guzman Action, And (2) Under Any Circumstances, A
          Question Of Fact Exists As To The Reasonableness Of Her Attorneys' Fees.
18

19        In her Third Cause of Action, Kellerer seeks a declaration that Allied "is

20   obligated to reimburse her for all fees and costs incurred in the defense of the Guzman

21   complaint." (Ex. A to Chatowski Decl. at p. 7.)  In her Fifth Cause of Action, which is

22   duplicative of her Third Cause of Action, Kellerer seeks a declaration that she is

23   entitled to reimbursement for her attorneys' fees incurred to settle the Guzman action.

24   (*Id.* at p. 8.)  Kellerer is not entitled to summary adjudication on her claims because, as

25   described above, Allied plainly did not owe her any duty to defend the action.

26        Even assuming, *arguendo*, a duty to defend existed, a triable issue of material

27   fact precludes Kellerer's entitlement to her fees.  Where an insurer is found to have

28   breached the duty to defend, the burden is on the insured to establish the amount of its

-15-

1    fees and costs incurred in the defense of the action. *Calif. v. Pacific Indemnity Co.*, 63

2    Cal.App.4th 1535, 1548 (Cal. App. 1998). Only then does the burden shift to the

3    insurer to prove that the insureds' fees are "unreasonable or unnecessary." *Id.* (quoting

4    *Aerojet-General Corp. v. Transport Indemnity Co.*, 17 Cal. 4th 38, 64 (Cal. 1997)).

5         Here, Kellerer has presented <u>no evidence</u> to the Court concerning the amount of

6    her fees, the total hours worked, or that all of her counsel's work was related to the

7    defense of Kellerer in the defense of the Guzman action. Thus, the burden has not

8    shifted to Allied to contest the reasonableness of her fees and costs. Because the

9    question of whether Kellerer is entitled to "all fees and costs incurred" in the defense

10   of the Guzman action is a question of fact, and triable issues of material facts exist, the

11   Court must deny Kellerer's motion for summary adjudication as to her Third and Fifth

12   Causes of Action.

13   D.   <u>Kellerer Is Not Entitled To Summary Adjudication On Her Second And Fourth
          Causes Of Action Because Even Under Kellerer's And Guzman's Newly</u>

14        <u>Alleged Facts (1) There Is No Coverage For The Claims Asserted In The
          Guzman Action, And (2) Under Any Circumstances, A Question Of Fact Exists</u>

15        <u>As To The Reasonableness Of The Settlement.</u>

16        In her Second Cause of Action Kellerer seeks a declaration that Allied "is and

17   was obligated to indemnify her for the damages in the Guzman complaint." (Ex. A to

18   Chatowski Decl. at p. 6.) In her Fourth Cause of Action she seeks a declaration that

19   "Allied is and was obligated to indemnify her for the amount of the Settlement

20   Agreement $561,161 that resolved the Guzman complaint." (*Id.* at p. 6-7.) Triable

21   issues of material fact, however, preclude the relief Kellerer seeks.

22        Kellerer first must prevail on her duty to defend claim which, for the reasons

23   explained above, she cannot do. Furthermore, even if a duty to defend existed, and

24   Allied was actually wrongful in denying the defense, the amount of her settlement with

25   Guzman would be only "presumptive" evidence that the claim was legitimate, and that

26   Kellerer was insured and liable in the amount of the settlement. *Isaacson v. Calif. Ins.*

27   *Guar. Assoc.*, 44 Cal.3d 775, 791 (Cal. 1988). This presumption, however, can be

28   overcome by proof of fraud or collusion, or that the settlement was unreasonable in

                                           -16-

amount. *Diamond Heights Homeowners Assoc. v. National Am. Ins. Co.,* 227 Cal.App.3d 563, 582 (Cal. App. 1990); *Zurich Ins. Co. v. Killer Music, Inc.,* 998 F.2d 674, 679 (9th Cir. 1993). Here, at a minimum, triable issues of material fact exist as to the reasonableness of the settlement and/or whether there was fraud or collusion.

First, whether and when Guzman ever actually fell at the property has never been established. Also remaining in question is what he was carrying at the time. Guzman originally claimed that he was carrying a piece of metal for a horse corral. (Moore Decl. at ¶ 7 and Ex. C at p. 23.) He later changed his story and claimed he was carrying a cabinet. (*Id.* at ¶ 11 and Ex. G; Ex. A to Chatowski Decl. at p. 29.)

Second, there is dispute as to the extent of Guzman's alleged injuries, and as a consequence, the reasonableness of the settlement. Guzman originally demanded $25,000 from Kellerer, which Kellerer relayed to Allied. (Skulborstad Decl. at ¶ 6 and Ex. E at p. 145 and ¶ 10 and Ex. H.) On July 15, 2014, however, Guzman claimed his damages were $761,191.67, consisting of:

| | |
|---|---|
| Past medical specials: | $158,691.97 |
| Future medical specials and future surgeries: | $150,000.00 |
| Loss of earnings (through the Date of the demand): | $96,500.00 |
| Future loss of earnings: | $156,000.00 |
| Pain and suffering: | $200,000.00 |
| Total | $761,191.67 |

(Ex. A to Jubelt Decl.) Guzman agreed to settle the case with Kellerer for $561,191.67 (which purportedly included a $200,000 reduction). (*Id.*) Instead of attempting to negotiate a settlement, however, Kellerer accepted Guzman's demand without question. The <u>only</u> point of negotiation was whether the settlement would include a covenant not to execute against Kellerer. (Jubelt Decl. at ¶ 4.)

Triable issues of material fact exist as to whether the settlement was "reasonable" and not collusive. Guzman filed his complaint on December 17, 2012. (Ex. A to Chatowski Decl. at p. 26.) The settlement Agreement was executed on October 14, 2014. (Ex. D Jubelt Decl.) Kellerer never filed an answer to the

-17-

1  complaint or an appearance in the action. (Ex. A to John Chatowski Decl. in Supp. of

2  Allied's Opposition to Plaintiff's Motion ("Chatowski Opp. Decl.").)

3       Nor did Kellerer propound any written discovery to Guzman in the case, or take

4  any depositions. (Ex. F to Chatowski Decl. at p. 133 and Ex. G at p. 150.) The

5  impetus for the settlement was to protect Kellerer with a covenant not to execute, and

6  to attempt to establish a purported "reasonable" value of the case to the prejudice of

7  Allied. Because serious questions exist as to the reasonableness of the settlement and

8  whether there was collusion, Kellerer is not entitled to judgment as a matter of law on

9  her Second and Fourth Causes of Action.

10  E.    Allied Is Entitled To Conduct Discovery Regarding Kellerer's Claims.

11       To the extent the Court does not grant Allied's cross-motion in its entirety,

12  Kellerer's motion must be denied or continued pursuant to Rule 56(d), which provides:

13       If a nonmovant shows by affidavit or declaration that, for
         specified reasons, it cannot present facts essential to justify its
14       opposition, the court may:

15       (1) defer considering the motion or deny it;

16       (2) allow time to obtain affidavits or declarations or to take
         discovery; or
17

18       (3) issue any other just order.

19       Rule 56(d) should be applied liberally as the "Federal Rules discourage motions

20  for summary judgment based on evidence outside the record until the nonmoving party

21  has had the opportunity to conduct discovery." *Rogers v. Home Shopping Network,*

22  *Inc.*, 57 F. Supp.2d 973, 981 (C.D. Cal. 1998). The Supreme Court has stated that

23  granting such an application <u>is mandated – not merely permitted as the rule implies–</u>

24  <u>"where the nonmoving party has not had the opportunity to discover information that is</u>

25  <u>essential to his opposition."</u> *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5

26  (1986) (emphasis added, referring to F.R.C.P. 56(d)'s predecessor, Rule 56(f)). Where

27  "a summary judgment motion is filed so early in the litigation, before a party has had

28  any realistic opportunity to pursue discovery relating to its theory of the case, district

-18-

1   courts should grant any Rule [56(d)] motion fairly freely." *Burlington N. Santa Fe*
2   *R.R. v. Assiniboine & Sioux Tribes*, 323 F.3d 767, 774 (9th Cir. 2003) *citing*
3   *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) and *Wichita Falls*
4   *Office Assoc. v. Banc One Corp.*, 978 F.2d 915, 919 n.4 (5th Cir. 1992).  The purpose
5   of Rule 56(d) is to protect the non-moving party from being "railroaded" by a
6   premature motion for summary judgment.  *Celotex Corp. v. Catrett*, 477 U.S. 317
7   (1986).  A Rule 56(d) application is generally granted where: (a) a timely application is
8   made; (b) the application specifically identifies relevant information, and; (c) there is
9   some basis for believing that the evidence actually exists.  *Visa International Service*
10  *Association v. Bankcard Holders of America*, 784 F.2d 1472, 1475 (9th Cir. 1986).

11  As described above, assuming the Court is not prepared to grant Allied's motion
12  in its entirety, triable issues of material fact exist as to the questions of coverage (both
13  on the duty to defend and the duty to indemnify) that will require further discovery.
14  As set forth in the concurrently-filed declaration of John A. Chatowski, Allied
15  propounded initial written discovery to Kellerer on May 20, 2015.  (Chatowski Opp.
16  Decl. at ¶ 4.)  She responded on or about July 2, 2015, and thereafter began producing
17  documents responsive to Allied's document requests.  (*Id.*)  To date, however, Kellerer
18  has not produced her counsel's bills for the time he spent defending the Guzman civil
19  action.  (*Id.*)  Thus, discovery is still necessary concerning the reasonableness of
20  Kellerer's counsel's fees.

21  After the initial case management conference in the case on June 11, 2015,
22  counsel discussed filing cross-motions for summary judgment or adjudication, and the
23  possibility of taking Kellerer's deposition.  Kellerer's counsel indicated that he would
24  not agree to permit Kellerer's deposition on <u>any</u> subjects other than on the duty to
25  defend issue and what she discussed with Allied.  (*Id.* at ¶ 5.)  Allied is entitled to
26  depose Kellerer regarding the facts and circumstances of the alleged accident, all of
27  her conversations with Allied, the negotiation of the settlement, and the new (and
28  contradictory) facts that she included in her declaration submitted to the Court in

-19-

1  support of her motion.  At least two third-party witnesses that Kellerer identified as

2  being in a position to testify that Guzman never fell also will need to be deposed.  (*Id.*

3  at ¶ 6.)

4                                    IV.    <u>CONCLUSION</u>

5          Because Kellerer cannot succeed as a matter of law on any of her claims, the

6  Court should deny her motion for summary adjudication in its entirety.

7  DATED:  September 4, 2015                              NIXON PEABODY LLP

8

9                                                         By: _____
10                                                         Gregory E. Schopf
                                                          John A. Chatowski
11                                                        Attorneys for Defendant
                                                          ALLIED PROPERTY AND
12                                                        CASUALTY INSURANCE
                                                          COMPANY, erroneously sued and
13                                                        served as ALLIED PROPERTY
                                                          AND CASUALTY INSURANCE
14                                                        COMPANY, A NATIONWIDE
                                                          COMPANY
15

16  4843-0637-7255.4
    729790-000085
17

18

19

20

21

22

23

24

25

26

27

28