O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

BARBARA KELLERER,                )   Case No. CV 15-00078 DDP (JEMx)
                                 )
                Plaintiff,       )
                                 )   **ORDER GRANTING ALLIED PROPERTY**
        v.                       )   **AND CASUALTY INSURANCE COMPANY'S**
                                 )   **MOTION FOR SUMMARY JUDGMENT AND**
ALLIED PROPERTY AND CASUALTY     )   **DENYING BARBARA KELLERER'S MOTION**
INSURANCE COMPANY,               )   **FOR SUMMARY ADJUDICATION**
Erroneously Sued As              )
Allied Property and Casualty     )   [Dkt. Nos. 18, 20]
Insurance Company, a             )
Nationwide Company,              )
                                 )
                Defendants.      )
_____  )

        Presently before the Court is Defendant Allied Property and

Casualty Insurance Company ("Allied")'s Motion for Summary

Judgment.  (Dkt. No. 18.)  Also before the Court is Plaintiff

Barbara Kellerer ("Kellerer")'s Motion for Summary Adjudication as

to her first, second, third, fourth, and fifth causes of action.

(Dkt. No. 20.)  Having considered the parties' submissions and

heard oral argument, the Court GRANTS Allied's motion and DENIES

Kellerer's motion.

///

///

I.    **BACKGROUND**

In August of 2010, Barbara Maurus Kellerer ("Kellerer") purchased property located at 10339 McBroom Street, Sunland, CA ("the Property").  (Kellerer Decl., Dkt. No. 20-3, ¶ 3.)  Around the same time, Kellerer also purchased a homeowners insurance policy and a personal umbrella liability insurance policy (collectively, the "Policies") from Allied.  (<u>Id.</u> at ¶ 4; Kellerer Decl. Ex. A, Dkt. No. 20-5, 4, 59.)  The homeowner's insurance policy was effective from August 22, 2010 to August 22, 2011 and the umbrella policy was effective from October 27, 2010 to October 27, 2011, from Defendant, Allied Property and Casualty Insurance Co. ("Allied").  (Kellerer Decl. at ¶ 4; Kellerer Decl. Ex. A, Dkt. No. 20-5, 4, 59.)

The Policies provide a "business pursuits" exception to coverage.  The homeowners insurance policy states, in relevant part:

> Coverages E [Personal Liability] and F [Medical Payments to Others] do not apply to . . . "[b]odily injury" or "property damage' arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured," whether or not the business is owned or operated by an "insured" or employs an "insured" . . . this [exclusion] applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business."

(Kellerer Decl. Ex. A at 33.)  The policy defines "business" as:

1    A trade, profession or occupation engaged in on a full-time,

2    part-time, or occasional basis; or any activity engaged in for

3    money or other compensation, except the following; (1)

4    Volunteer activities for which no money is received other than

5    payment for expenses incurred to perform the activity; (2)

6    Providing home day care services for which no compensation is

7    received, other than mutual exchange of services; or (3) The

8    rendering of home day care services to a relative of the

9    "insured."

10   (Id. at 13.)

11       Kellerer was the President and a board member of the Our

12   Children Their Future Foundation (the "Foundation"), and allowed

13   the Foundation to have nonexclusive use of some parts of the

14   Property, including a horse corral that would be used to train

15   horses for equine therapy.  (Id. at ¶¶ 7-9; Skulborstad Decl. Ex.

16   E, Dkt. No. 18-6, at 9-10.)  As President, Kellerer was paid

17   $35,000 per year by the Foundation in 2010 and 2011.  (Skulborstad

18   Decl. Ex. F, Dkt. No. 18-7, at 2.)

19       During the months of November and December 2010, Kellerer

20   hired a day laborer, Pedro Guzman ("Guzman"), to assist with

21   various tasks on the Property, most of which were done for the

22   Foundation.  (Kellerer Decl., ¶¶ 6-7; Kellerer Decl. Ex. B, Dkt.

23   No. 20-6, at 7.)  The Foundation paid Guzman for 14 days of work

24   with checks dated November 12, 2010, November 16, 2010, November

25   17, 2010, November 24, 2010, and December 18, 2010, in the total

26   amount of $1480.  (Chatowski Decl., Dkt. No. 18-16, ¶ 7; Chatowski

27   Decl. Ex. H, Dkt. No. 18-20.)  The memos on the checks state that

28

1   the payment was for tree planting, brickwork, and fence and

2   concrete work. (Chatowski Decl. Ex. H.)

3        On or around December 17, 2010, Guzman allegedly injured his

4   back and neck while working on the Property. (Kellerer Decl. Ex. B

5   at 7.)  In early 2011, after Allied received notice of a claim made

6   by Guzman as to his injury, Allied conducted an investigation.

7   (Moore Decl., Dkt. No. 18-10, ¶¶ 3-7.)  An Allied Claims Associate

8   spoke with Kellerer on several occasions and interviewed Guzman

9   over the phone on January 20, 2011. (Id. at ¶¶ 4, 7.)  Kellerer

10  provided the Claims Associate with copies of checks (all from the

11  Foundation) that Guzman received for his work on the Property as

12  well as a worksheet showing the dates Guzman worked in November and

13  December 2010 as well as the type of work Guzman did. (Id. at ¶ 5

14  & Ex. A.)  During the interview with the Claims Associate, Guzman

15  stated that he was injured while carrying a large metal fence used

16  to make a horse corral on the Property. (Moore Decl. Ex. C, Dkt.

17  No. 18-12, 4:1-3.)  Guzman also stated that he worked for Kellerer

18  from October until December of 2010, "more or less." (Id. at 3:

19  16-20.)  In response to a question about how much Kellerer paid him

20  for work done on the Property, Guzman stated that he was paid $100

21  per day, and that he worked three to five days per week for one

22  month. (Id. at 5:3, 6:5-10.)  When the Claims Associate asked if

23  his total pay from her was about $3,000 ($100 a day for 30 days),

24  he responded, "I think somewhere around that amount more or less."

25  (Id. at 6:13-16.)

26       On February 9, 2011, Guzman filed a claim with the Workers'

27  Compensation Appeals Board ("WCAB") in Marina Del Rey, CA. (Moore

28  Decl. Ex. E, Dkt. No. 18-13.)  Allied agreed to defend Kellerer in

1  the workers' compensation case, subject to a reservation of rights,
2  and further informed Kellerer that it would appear that Guzman was
3  an employee of the Foundation rather than of Kellerer herself.
4  (Moore Decl. at ¶ 9 & Ex. D.)  On October 24, 2011, Allied filed a
5  Petition to Dismiss Kellerer as a party defendant in the case.
6  (Moore Decl. Ex. E.)  In the Petition to Dismiss, Allied asserted
7  that Guzman's employer was the Foundation, not Kellerer, and Allied
8  submitted copies of payroll checks to prove that the work performed
9  by Guzman was in the course of his employment for the Foundation,
10 which was not a party to Kellerer's insurance policy.  (Id.)  The
11 WCAB dismissed the claim against Kellerer that same day.  (Moore
12 Decl. Ex. F, Dkt. No. 18-13.)

13      On October 27, 2011, Guzman filed a second claim with the WCAB
14 in Van Nuys, CA.  (Moore Decl. Ex. G., Dkt. No. 18-14.)  The second
15 claim alleged that Guzman tripped over an underground tube while
16 lifting and carrying a cabinet with a coworker, and as a result,
17 Guzman injured his back and neck.  (Id.)  Allied contends that this
18 second application to the WCAB was not accepted because Guzman's
19 claims against Kellerer had already been dismissed by the WCAB in
20 Marina Del Rey.[1]  (Moore Decl. at ¶ 11.)

21      On December 17, 2012, Guzman filed an action for negligence
22 and premises liability against Kellerer and the Foundation,
23 claiming that he was injured on or around December 17, 2010 when he
24 was instructed to help lift and carry a cabinet on the Property.
25 (Skulborstad Decl. Ex. A at 3, 6, 9.)  Guzman alleges that he named
26 Kellerer and the Foundation as defendants in his lawsuit because he

27 ───────────────

28      [1] However, neither party has proffered any WCAB document or
letter that would verify this contention.

5

1   was not sure who owned the Property and the furniture he was
2   moving.  (Jubelt Decl. Ex. C, ¶ 5.)
3       On March 26, 2013, Kellerer was interviewed over the phone by
4   an Allied Claims Associate.  (Skulborstad Decl. at ¶ 6; Skulborstad
5   Decl. Ex. E.)  During the interview, Kellerer stated that the
6   Foundation paid Guzman for the work done on the Property over 14
7   days in November and December of 2010, and that she paid him $100
8   per day with checks from the Foundation's checking account.
9   (Skulborstad Decl. Ex. E at 7-8.)  When the Claims Associate asked
10  Kellerer about the furniture that Guzman claimed he was moving when
11  he was injured, Kellerer stated that there were a table and six
12  chairs left from the previous owner of the Property, but that
13  Guzman was not carrying furniture around. (Id. at 13.)
14      On April 9, 2013, Allied sent a letter to Kellerer, declining
15  to defend or indemnify her for claims made against her in Guzman's
16  December 17, 2012 lawsuit.  After Allied declined to defend
17  Kellerer, she retained counsel and authorized her counsel to
18  attempt to settle the claims with Guzman.  (Kellerer Decl. at ¶¶
19  18-19.)  On July 15, 2014, Guzman's counsel provided Kellerer's
20  counsel with a proposed settlement of $761,191.67, which included
21  medical records and billing, and a statement of present and future
22  loss of earnings, future medical expenses, and pain and suffering.
23  (Jubelt Decl. Ex. A.)  The proposed settlement also included an
24  offer to reduce the amount by $200,000 if the parties were able to
25  resolve the manner within 14 days.  (Id.)  The parties reached a
26  settlement agreement on October 14, 2014 for the amount of
27  $561,191.67.  (Jubelt Decl. Ex. D.)
28

On October 29, 2014, Kellerer filed a complaint in state court against Allied for breach of contract, including: (1) declaratory relief regarding duty to defend; (2) declaratory relief regarding duty to indemnify; (3) declaratory relief regarding duty to defend payment of defense fees and costs; (4) declaratory relief regarding duty to indemnify, payment of the settlement; (5) declaratory relief regarding duty to defend payment of defense fees and costs; (6) breach of covenant of good faith and fair dealing; (7) bad faith. (See Complaint, Dkt. No. 1-2)  Allied filed for removal to federal court based on diversity of citizenship, and the case was removed on January 6, 2015. (Notice of Removal, Dkt. No. 1.)

The parties have filed cross-motions for summary judgment and summary adjudication.  Allied moves for summary judgment as to all claims.  (Dkt. No. 18.)  Kellerer moves for summary adjudication as to her first through fifth claims.  (Dkt. No. 20.)

## II.  LEGAL STANDARD

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A ll reasonable inferences from the evidence must be drawn in favor of the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 242 (1986).  If the

7

1  moving party does not bear the burden of proof at trial, it is

2  entitled to summary judgment if it can demonstrate that "there is

3  an absence of evidence to support the nonmoving party's case."

4  Celotex, 477 U.S. at 323.

5      Once the moving party meets its burden, the burden shifts to

6  the nonmoving party opposing the motion, who must "set forth

7  specific facts showing that there is a genuine issue for trial."

8  Anderson, 477 U.S. at 256.  Summary judgment is warranted if a

9  party "fails to make a showing sufficient to establish the

10 existence of an element essential to that party's case, and on

11 which that party will bear the burden of proof at trial." Celotex,

12 477 U.S. at 322.  A genuine issue exists if "the evidence is such

13 that a reasonable jury could return a verdict for the nonmoving

14 party," and material facts are those "that might affect the outcome

15 of the suit under the governing law." Anderson, 477 U.S. at 248.

16 There is no genuine issue of fact "[w]here the record taken as a

17 whole could not lead a rational trier of fact to find for the

18 nonmoving party." Matsushita Elec. Indus. Co. v. Zenith Radio

19 Corp., 475 U.S. 574, 587 (1986).

20     It is not the court's task "to scour the record in search of a

21 genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275,

22 1278 (9th Cir.1996).  Counsel has an obligation to lay out their

23 support clearly.  Carmen v. San Francisco Sch. Dist., 237 F.3d

24 1026, 1031 (9th Cir.2001).  The court "need not examine the entire

25 file for evidence establishing a genuine issue of fact, where the

26 evidence is not set forth in the opposition papers with adequate

27 references so that it could conveniently be found." Id.

28 ///

III.   DISCUSSION

    A.   Duty to Defend

     In an action seeking declaratory relief for duty to defend, "the insured must prove the existence of a potential for coverage, while the insurer must establish the absence of any such potential. In other words, the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot." Montrose Chemical Corp. V. Superior Court, 6 Cal. 4th 287, 300 (1993). "The duty to defend is determined by reference to the policy, the complaint, and all facts known to the insurer from any source. " Id.; Gray v. Zurich Ins. Co., 65 Cal. 2d 263, 276 (1966). "[E]xtrinsic facts which may create a duty to defend must be *known by the insurer* at the *inception* of the third party lawsuit" and "the duty to defend ceases as soon as it has been shown that there is no potential for coverage." Gunderson v. Fire Ins. Exchange, 37 Cal. App. 4th 1106, 1114 (1995)(citing Montrose, 6 Cal. 4th at 295).

     When the extrinsic facts eliminate the potential for coverage, the insurer may decline to defend even if the insured's allegations suggest potential liability. Waller v. Truck Ins. Exchange Inc., 11 Cal. 4th 1, 19 (1995). More specifically, the insurer must have extrinsic evidence which "presents undisputed facts which conclusively eliminate a potential for liability." Montrose Chemical Corp., 6 Cal. 4th at 298-99. The question of coverage is judged, "not . . . on the basis of hindsight but, rather, from all of the information available to the insurer at the time of the tender of the defense." B & E Convalescent Ctr. v. State Comp. Ins. Fund, 8 Cal. App. 4th 78, 92 (1992). Furthermore, the insurer

does not have a duty to continue to investigate whether there is a potential for coverage if the insurer made an informed decision on coverage at the time of tender. American States Ins. Co. V. Progressive Cas. Ins. Co., 180 Cal. App. 4th 18, 26 (2009); Monticello Ins. Co. V. Essex Ins. Co., 162 Cal. App. 4th 1376, 1388 (2008). "However, where the information available at the time of tender shows no coverage, but information available later shows otherwise, a duty to defend may then arise." American States Ins. Co., 180 Cal. App. 4th at 26.

In addition, the duty to defend applies to claims that are "groundless, false, or fraudulent," and the duty to defend is "separate from and broader than the insurer's duty to indemnify." Waller, 11 Cal. App. 4th at 19. "[T]he duty to defend a suit which raises a possibility of liability, but is eventually shown to be groundless, does not equate with a duty to defend a suit which raises no potential liability." B & E Convalescent Ctr., 8 Cal. App. 4th at 100 (citing Nichols v. Great American Ins. Companies, 169 Cal. App. 3d 766 (1985)).

Kellerer argues that Allied owed her a duty to defend in the underlying state court action, because there are facts that showed that she paid Guzman cash to move her furniture. (Opp'n to MSJ, Dkt. No. 25, at 5-7.) Kellerer contends that she did not mention the personal cash payments to Guzman when the Claims Adjuster interviewed her because the workers' compensation claim was in regards to the horse corral that was being built for the Foundation, not the furniture. (Id. at 10.) In addition, Kellerer argues that Guzman stated in his interview that Kellerer paid him $100 for approximately 30 days of work, which proves she paid him

cash for work done on the Property that was not for the Foundation. (Id. at 6.) Allied argues that Kellerer is relying on evidence that was not available at the time Allied declined to defend and indemnify Kellerer. (Opp'n to MSA, Docket No. 23, at 9-10.)

Based on the facts known or available to Allied during its investigation, however, Allied reasonably declined to defend Kellerer. Allied determined that the claims were not covered under the Policies because Guzman's alleged injuries occurred while he was working for the Foundation rather than for Kellerer, and work for the Foundation was not covered. Allied had no reason to believe that Kellerer had hired Guzman to move a cabinet or any personally-owned furniture on the property. Although Guzman's complaint alleged that he had been moving a cabinet for Kellerer personally, he had also told an Allied Claims Adjuster in a 2011 interview that he had been moving fencing for the Foundation when he was injured. Furthermore, Kellerer informed Allied that the only furniture on the property were a table and chairs, which Guzman did not move. The documentation Kellerer provided to Allied showed that Guzman had been paid with checks exclusively from the Foundation, and Kellerer stated that she had never paid Guzman with her own money. Kellerer contends that, if Guzman did move furniture, it was for her personally and not for the Foundation. She also proffers a calendar with handwritten notes, where one of the notes indicates that Guzman was paid $20 in cash on December 17 in addition to payment from the Foundation. (See Chatowski Decl. Ex. H at 23.) However, this evidence was never presented to Allied during the pendency of the underlying suit or in conjunction with Kellerer's initial tender. Accordingly, the Court will not

1   consider this document in its analysis.  See Monticello, 162 Cal.

2   App. 4th at 1388 (in evaluating duty to defend, courts cannot

3   consider evidence that was not tendered to the insurer during the

4   pendency of the underlying action).  Based on the extrinsic

5   evidence that was known to Allied at the time, Allied reasonably

6   concluded that there was no possibility for coverage as Guzman's

7   employment qualified as a "business pursuit" not covered by the

8   Policies.

9        Furthermore, it is clear that the calendar entry referencing

10  the alleged $20 payment to Guzman is likely fraudulent.  No other

11  reasonable explanation has been tendered, either in Kellerer's

12  briefs or at oral argument.  The version of the calendar Kellerer

13  originally provided to the Claims Adjuster in January 2011, years

14  prior to the submission of the second calendar, did not contain a

15  reference to the $20 payment.  (See Moore Decl. Ex. A at 4;

16  Chatowski Decl. Ex. H at 23.)  The handwriting and other entries on

17  the two versions of December calendar pages are identical - they

18  match up in every way as copies from the same original page -

19  except for the inexplicable addition of the supposed $20 payment.

20  It hardly seems necessary to state that such entry was likely

21  fabricated in order to support Kellerer's assertion in this case

22  that Guzman was working for her personally on the date that he was

23  injured.  It defies common sense to see it as anything else.  This

24  conduct simply cannot be rewarded with permitting this suit to go

25  forward.

26       **B.  Duty to Indemnify**

27       The duty to defend is broader than the duty to indemnify.

28  Montrose, 6 Cal. 4th at 299.  "Where there is a duty to defend,

12

there may be a duty to indemnify; but where there is no duty to defend, there cannot be a duty to indemnify." <u>Certain Underwriters at Lloyd's of London v. Superior Court</u>, 24 Cal. 4th 945, 958 (2001). Here, because there was no duty to defend, Allied also has no duty to indemnify.

Furthermore, even taking into account the additional evidence Kellerer now proffers to Allied and to the Court, Allied owes Kellerer no duty to indemnify. The only facts - aside from Kellerer's self-serving declaration - that could feasibly support Guzman's allegations that he was injured while moving a cabinet are (1) Guzman agreed with the Claims Adjuster's assessment that he was paid approximately $3,000 for his work while the checks from the Foundation only totaled $1,480, and (2) Kellerer's suspect handwritten note on her December 2010 calendar that she paid Guzman $20 in case on the day he allegedly was injured. However, Guzman's statement that he was paid $3,000 does not indicate that he was paid that amount by Kellerer personally. As to Kellerer's handwritten notation, the Court has addressed this issue, above.

**IV.   CONCLUSION**

For the foregoing reasons, the Court GRANTS Allied's motion for summary judgment and DENIES Kellerer's motion for summary adjudication.

IT IS SO ORDERED.


Dated: September 30, 2015

HON. DEAN D. PREGERSON

United States District Judge

13